## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WELLS FARGO BANK, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | 2:17-cv-01010 |
| v. ) | |
| ) | |
| MMDG L.P., ) | |
| ) | |
| Defendant. ) | |

| | |
|---|---|
| WELLS FARGO BANK, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | 3:17-cv-00140 |
| v. ) | |
| ) | |
| DGMM L.P., ) | |
| ) | |
| Defendant. ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Wells Fargo ("Plaintiff") initiated the above-captioned proceedings against Defendants

MMDG L.P. ("MMDG") and DGMM L.P. ("DGMM") in order to foreclose on commercial

mortgages that Plaintiff purportedly currently holds. The matters were consolidated for pre-trial

purposes. Plaintiff now moves the Court for entry of summary judgment in both matters. (ECF

Nos. 43, 44). All parties have fully briefed their positions, and the Court heard argument on the

pending Motions on October 15, 2018. The matter is now ripe for disposition. For the reasons that

follow, Plaintiff's Motions for Summary Judgment (ECF Nos. 43, 44) will be GRANTED.

## I.  BACKGROUND

The following facts are undisputed. On or about April 25, 2007, Bear Stearns Commercial Mortgage, Inc. ("Bear Stearns") issued commercial mortgage loans, in excess of $3 million each, to MMDG and DGMM. (Pl.'s Concise Statement of Material Facts in Supp. of Summ. J. Against MMDG ("Pl.'s CSF, MMDG") ¶ 2, ECF No. 45; Pl.'s Concise Statement of Material Facts in Supp. of Summ. J. Against DGMM ("Pl.'s CSF, DGMM") ¶ 2, ECF No. 48). The loans were evidenced by promissory Notes that were executed on the same day by MMDG and DGMM, respectively, in favor of Bear Stearns. (the "Notes", ECF Nos. 53-4, 56-4). Contemporaneously with the Notes, MMDG and DGMM each executed a Mortgage and Security Agreement in favor of Mortgage Electronic Registrations Systems, Inc. ("MERS") "as mortgagee and Lender's nominee." (the "Mortgage Agreements", ECF Nos. 53-5, 56-5). The Mortgage granted by MMDG was recorded with the Recorder of Deeds of Allegheny County, Pennsylvania on May 11, 2007. (Pl.'s CSF, MMDG ¶ 6). The Mortgage granted by DGMM was recorded with the Recorder of Deeds of Cambria County, Pennsylvania on May 11, 2007. (Pl.'s CSF, DGMM ¶ 6).

The two Mortgages at issue here are identical in all material aspects for the purposes of the pending Motions.[1] The two Mortgages are governed by the same form of instruments, the relevant transactions took place on the same dates, the Defendants are represented by the same counsel, and the same arguments were advanced on behalf of both Defendants.

The Mortgages granted to MERS "as mortgagee and Lender's nominee" purport to grant MERS a security interest in the "rights, interests and estates now owned, or hereafter acquired" by

---

[1] The principal amounts on the loans differ slightly, as do the physical locations of the mortgaged properties. *See supra.* Neither matter is material to the Court's resolution of the pending motions. Because both properties are located within Pennsylvania, Pennsylvania law applies to both foreclosure proceedings. *See infra.* Defendants' arguments as to why Plaintiff cannot foreclose on the mortgages are not related to the principal loan amounts or property locations. *See infra.*

MMDG and DGMM in relation to the mortgaged properties. (Mortgage Agreements § 1.1). The Mortgage Agreements further provide that, upon default, "Lender, or Mortgagee, acting on behalf of and at the sole discretion of Lender in its capacity as Lender's nominee, may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property." (*Id.* § 11.1). In the context of the Mortgage Agreements, "Lender" "shall be deemed to collectively or individually (as the context requires) refer to Lender or to Mortgagee, acting on behalf of and at the sole direction of Lender in its capacity as Lender's nominee." (*Id.* § 16.1). Finally, both Mortgage Agreements state that "with respect to the creation, perfection, priority and enforcement of the lien of this security instrument . . . the laws of the state where the property is located shall apply." (*Id.* § 18.1).

Thereafter, Bear Stearns executed Omnibus Assignments in favor of Plaintiff, which purported to assign all of Bear Stearns' "right, title, and interest" in and to the Mortgage Agreements made by MMDG and DGMM and the Notes evidencing the commercial mortgage loans. (the "Omnibus Assignments" at 2, ECF Nos. 53-7, 56-7). These documents are undated. (*Id.*). Undated Allonges to the Notes were also executed by Bear Stearns in favor of Plaintiff. (the "Allonges", ECF Nos. 53-8, 56-8).[2] Plaintiff's corporate designee testified that these assignment documents were executed in or around June of 2007. (Deposition of David Amenyah ("Amenyah Dep.") at 45:16–46:3, ECF No. 53-6). Bear Stearns merged with JP Morgan Chase Commercial Mortgage Securities Corporation ("JP Morgan") on December 22, 2009, and therefore ceased to exist as an independent entity on that date. (ECF No. 53-10).

On June 7, 2017, MERS executed Mortgage and Security Agreement Assignments in favor of Plaintiff, which purported to assign Plaintiff the respective Mortgage Agreements between

---

[2] An "allonge" is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary (10th ed. 2014).

MMDG and DGMM and MERS "together with all rights accrued or to accrue under the Mortgage, any and all promissory note(s) and the obligations described therein, the debt and claims secured thereby, and all sums of money due and to become due thereon, with interest as provided for therein." (the "Mortgage Assignments", ECF Nos. 53-9, 56-9). The Mortgage Assignment for the MMDG Mortgage was recorded on June 19, 2017, in Allegheny County, Pennsylvania. (ECF No. 53-9). The Mortgage Assignment for the DGMM Mortgage was recorded on June 29, 2017, in Cambria County, Pennsylvania. (ECF No. 56-9).

MMDG and DGMM's Rule 30(b)(6) corporate designee—Jeno Guttman—admitted in his deposition that MMDG and DGMM both failed to pay off the respective Notes at maturity. (Deposition of Jeno Guttman ("Guttman Dep.") at 31:16–32:4, 37:19–24, ECF No. 47-3). Failing to pay off the Notes at maturity put the Mortgages into default. (Mortgages § 10.1(a)). Plaintiff provided Notices of Default and Demand for Payment to Borrower, both dated June 7, 2017, to MMDG and DGMM. (ECF Nos. 47-10, 50-10). Both Notices were received by the borrowers in June of 2017, as acknowledged by MMDG and DGMM's corporate designee. (Guttman Dep. at 32:14–21; 34:7–15). These foreclosure actions were commenced on August 2, 2017. (Compl., ECF No. 1; No. 17-cv-140, Compl., ECF No. 1).

## II. STANDARD FOR REVIEW

A court shall grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment must be granted "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all

-4-

justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). But, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The moving party bears the initial burden of demonstrating that there are no genuine disputes of material fact. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992) (citing *Celotex*, 477 U.S. at 323). If the moving party satisfies this burden, the opposing party must designate specific facts in the record that show that there is a genuine factual dispute to be resolved at trial. *Celotex*, 477 U.S. at 324. The non-moving party may rely on its own affidavits or on the "depositions, answers to interrogatories, and admissions on file" to designate these facts, but may not rely solely on its own pleadings. *Id.*; *see also Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## III. DISCUSSION

Per the original Mortgage Agreements between Bear Stearns and MMDG, and Bear Stearns and DGMM, Pennsylvania law applies to this matter because these are actions to enforce the Mortgages. (Mortgage Agreements § 18.1).[3] "In a mortgage foreclosure action, the plaintiff must demonstrate the existence of an obligation secured by a mortgage, and a default on that obligation." *Iowa Square Realty LLC v. JSMN Shenango Valley Mall, LLC*, No. 17-497, 2018 WL 783752 (W.D. Pa. Feb. 8, 2018) (internal quotations omitted). Under Pennsylvania law, summary

---

[3] At this juncture, neither party disputes that Pennsylvania law applies in this case. The Court also notes that both parties cited unpublished memorandum decisions of the Superior Court of Pennsylvania in support of their positions in their respective briefs. Unpublished memorandum decisions "shall not be relied upon or cited by a Court or a party in any other action or proceeding," subject to limited exceptions which do not apply here. 210 Pa. Code § 65.37. The Court has given no consideration to these cited decisions.

judgment is appropriate in a mortgage foreclosure action "if the mortgagors admit that the mortgage is in default, that they have failed to pay interest on the obligation, and that the recorded mortgage is in the specified amount." *Cunningham v. McWilliams*, 714 A.2d 1054, 1057 (Pa. Super. Ct. 1998) (citing *Landau v. W. Pa. Nat'l Bank*, 445 Pa. 217, 225–26 (1971)). Summary judgment may still be appropriate even if the mortgagors do not admit the total amount of indebtedness in their pleadings. *Id.*

### a. Plaintiff has standing to foreclose on the Mortgages.

MMDG and DGMM argue that Plaintiff lacks standing to foreclose on the mortgages because Plaintiff is not the real party in interest in this action. In the federal system, "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). The mortgagee is the real party in interest in a mortgage foreclosure action. *Wells Fargo Bank, N.A. v. Lupori*, 8 A.3d 919, 922 n.3 (Pa. Super. Ct. 2010). In order to establish standing to enforce a mortgagee, a plaintiff must plead ownership of the mortgage in its complaint and "have the right to make demand upon the note secured by the mortgage." *CitiMortgage, Inc. v. Barbezat*, 131 A.3d 65, 68 (Pa. Super. Ct. 2016). And, "once in possession of the note and mortgage, a lien holder can institute foreclosure proceedings even before a formal assignment of the mortgage takes place." *Id.* at 72 n.3; *see also U.S. Bank v. Mallory*, 982 A.2d 986, 994 (Pa. Super. Ct. 2009) ("[T]he recording of an assignment of the mortgage [is] not a prerequisite to Appellee having standing to seek enforcement of the mortgage via a mortgage foreclosure action.").

MMDG and DGMM assert that Plaintiff "premises its status as a "party of interest" in this action based on an undated Omnibus Assignment and Allonge." (Br. in Opp. at 11, ECF No. 51). The Court does not agree with this assessment. In light of MMDG and DGMM's admitted defaults on the Note, the Defendants' merits arguments and standing/real party in interest

arguments collapse into a single, dispositive question: did Plaintiff hold effective Notes and the Mortgages when the foreclosure actions were initiated? If Plaintiff did, then summary judgment is appropriate. *See Barbezat*, 131 A.3d at 69 ("[G]iven appellee's uncontested ownership of the mortgage and possession of the note, the trial court did not err in concluding that appellee had standing as a real party in interest to bring the underlying foreclosure action.").

### b. There are no material factual disputes.

In the Court's estimation, there is one potential factual dispute in this case: the date on which the Omnibus Assignments and Allonges to the Notes from Bear Stearns to Plaintiff were executed. MMDG and DGMM assert that Plaintiff's "interest in the action at bar and its ability to foreclose on the subject property hinges on the date the Omnibus Assignment and/or Allonge were executed." (Br. in Opp. at 13). If the Omnibus Assignments and/or Allonges, which are both undated, were, in fact, executed after Bear Stearns merged with JP Morgan, then according to MMDG and DGMM, the assignment of the Notes could be ineffective because Bear Stearns ceased to exist as an independent entity on December 22, 2009, via a merger with JP Morgan. (ECF No. 53-10).

Plaintiff relies on the deposition of David Amenyah, Plaintiff's Rule 30(b)(6) corporate designee, to assert that the Omnibus Assignments were signed "on or around June 2007." (Amenyah Dep. at 45:16–46:3). But, Mr. Amenyah had also stated earlier in his deposition that, because the Omnibus Assignment of the MMDG Note was undated, he could not "say exactly when it was signed" because doing so would be speculation. (*Id.* at 39:22–24). Mr. Amenyah also stated that he had no knowledge of when the Omnibus Assignment of the DGMM Note was executed. (*Id.* at 41:19–21). Mr. Amenyah then added to, and modified, his testimony regarding

-7-

when the documents at question were executed after a brief recess in the deposition proceedings.[4] After counsel for MMDG and DGMM inquired as to the basis for Mr. Amenyah's new testimony, Mr. Amenyah affirmatively stated that his testimony "is that the[] assignments," both the Omnibus Assignments and Allonges, "were in place in June of 2007." (*Id.* at 50:23–25). Mr. Amenyah explained the rationale for his changed testimony this way: the trust in which the loans were deposited was created sometime around June of 2007, and therefore the assignments of these loans (the Omnibus Assignments and Allonges) would have been executed around the same time. (*Id.* at 45:16–49:25). If the assignment documents were not executed, the loans "would not be deposited in a trust." (*Id.* at 46:9).

MMDG and DGMM argue that Mr. Amenyah's clarification of his testimony creates a factual dispute regarding when the Omnibus Assignments and Allonges were executed. They say that given that Plaintiff relies exclusively on the deposition testimony of Mr. Amenyah to establish the date that the Omnibus Assignments and Allonges were executed, the resolution of this factual question would ultimately turn, in part, on the credibility of Mr. Amenyah. They contend that Mr. Amenyah's credibility might fairly be called into question both because of his inconsistent testimony and based on his statements that he only became familiar with the Omnibus Assignments and Allonges as part of this litigation and did not "communicate directly with" Wells Fargo regarding "these particular loans." (Amenyah Dep. at 48:3–6; 13:21–25).

But, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

---

[4] MMDG and DGMM assert that Mr. Amenyah received "improper coaching and an off-the-record confidential meeting" that led him to correct his testimony. (*See, e.g.*, MMDG CSF ¶ 14, ECF No. 52). There is no record evidence—either in the deposition or otherwise—that Mr. Amenyah was "coached" in any matter. The Court gives no weight to this allegation.

Even if Mr. Amenyah's deposition testimony created a factual dispute regarding whether the assignment documents were executed in June, 2007,[5] *that* dispute would not be material. *See Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 129 (3d Cir. 1998) ("A fact is "material" if, under the substantive law of the case, it is outcome determinative.") (citing *Anderson*, 477 U.S. at 247–48). MMDG and DGMM argue that, "until it can be demonstrated with credible evidence" that the assignment documents "were executed *before* Bear Stearns' merger with JP Morgan," that summary judgment is inappropriate. (Br. in Opp. at 13). In essence, they argue that because the documents are undated, and because Mr. Amenyah later corrected his testimony about what he knew (as the Rule 30(b)(6) corporate designee) as to the date in which the documents were executed, then it is *possible* that these documents *may* have been executed after Bear Stearns merged with JP Morgan. Implicit in these arguments is that it is uncertain whether a representative of Bear Stearns truly signed the assignment documents since Bear Stearns ceased to exist as an independent entity following the merger of Bear Stearns and JP Morgan in December of 2009.

But fighting about the date on which these documents were executed is, on this record, a red herring. The more accurate and precise framing of the *material* issue is whether the Omnibus Assignments and Allonges are valid and effective. MMDG and DGMM offer no authority mandating that these documents be dated, and as will be discussed below, Plaintiff has identified other independently sufficient and uncontroverted evidence in the record that establishes the validity of the assignment documents. Moreover, MMDG and DGMM "may not prevail" in defeating a Motion for Summary Judgment "merely by discrediting the credibility of the movant's evidence; it must produce some affirmative evidence" generating a genuine dispute as to a material

---

[5] The Court expresses no opinion as to whether the date of execution is genuinely in dispute. MMDG and DGMM offered no affirmative evidence to counter Mr. Amenyah's ultimate assertion that the assignment documents were in place in or around June of 2007. (Amenyah Dep. at 50:23–25).

fact. *Big Apple BMW*, 974 F.2d at 1363. If Plaintiff comes forward with sufficient evidence to meet its obligations under Federal Rule of Civil Procedure 56(c),[6] then MMDG and DGMM "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (citing Fed. R. Civ. P. 56(e)).

Plaintiff has identified sufficient evidence in the record to meet its obligation under Rule 56(c) here. First and foremost, Plaintiff produced copies of the Omnibus Assignments and Allonges that facially assert they were signed by a "Managing Director" of Bear Stearns. (ECF Nos. 53-7, 53-8, 56-7, 56-8). Neither MMDG nor DGMM has produced record evidence that challenges, let alone contradicts, the authenticity of the signatures, the signatory's authority, or any other portion of the documents. Further, Plaintiff's corporate designee, in response to a question by counsel for MMDG and DGMM, confirmed that loan assignment documents *signed by Bear Stearns* that purported to transfer the Notes and Mortgages to Plaintiff were kept in Plaintiff's "regularly kept loan transaction files." (Amenyah Dep. at 44:10–14). In other words, Plaintiff's representative testified under oath that Plaintiff possessed and maintained documents signed on behalf of Bear Stearns as part of its regular business practices, and that the documents at issue were in files relating to the transactions from Bear Stearns to Plaintiff.[7] Mr. Amenyah's explanation of how and when these loans would be deposited in the trust, as explained above,

---

[6] "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by[] citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only, admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). A moving party must establish these facts for each claim or part of a claim for which the party is seeking summary judgment. Fed. R. Civ. P. 56(a).

[7] As explained earlier, the Court observed that there is no support in the record for MMDG and DGMM's allegation that Plaintiff's corporate designee was "coached" off the record. But even if "coaching" were a concern (it is not), this exchange took place prior to the break in the deposition at which Plaintiff is accused to have "coached" the witness.

further confirms that these assignment documents were validly and effectively executed by a representative of Bear Stearns prior to the initiation of the foreclosure proceedings.

Thus, even if Mr Amenyah's testimony is contested as to the June, 2007, execution date, MMDG and DGMM have advanced zero record evidence that the assignment documents were not signed (as they facially state) by "Bear Stearns," or that any of the assignment documents were signed after the Bear Stearns/J.P. Morgan merger. The Court also notes that MMDG and DGMM admitted that Plaintiff was their lender when the Notices of Default were received and that they had no factual basis to dispute Plaintiff's status as their lender. (Guttman Dep. at 33:12–20, 34:7– 21). MMDG and DGMM further admitted that, as of May 1, 2017, no other party aside from Plaintiff made a demand on either MMDG or DGMM for payment of the Notes. (*Id.* at 33:21–25, 34:22–35:2).[8] These facts, combined with the fact that MMDG and DGMM had been making payments to Plaintiff,[9] along with the unchallenged "Bear Stearns" signature on the assignment documents, demonstrate that Plaintiff has more than met its burden in establishing that there is no genuine dispute as to whether the assignments of the Notes to Plaintiff were valid. *See Bank of Am., N.A. v. Gibson*, 102 A.3d 462, 465 (Pa. Super. Ct. 2014) ("Finally, we are persuaded by the

---

[8] The admissions in relation to the MMDG mortgage is below.

Q.   When you received this Notice of Default, did you understand that Wells Fargo Bank, as trustee, was now art that point in time your lender?

A.   Obivously, yeah.

Q.   Did you have any factual basis to dispute that Wells Fargo, as trustee, was the lender?

A.   No.

Q.   Since May 1, 2017, has any party other than Wells Fargo Bank, N.A., or its representatives made a demand on MMDG for payment of the note?

A.   No.

(Guttman Dep. at 33:12–25). A nearly identical exchange in relation to the DGMM mortgage, with the same material responses, took place on page 34 line 7 through page 35 line 2.

[9] Transaction Histories for both loans are included at ECF No. 47-13 (for the MMDG loan) and ECF No. 50-13 (for the DGMM loan).

fact that Appellant made payments on his mortgage to Bank of America until his default. Only after Bank of America began foreclosure proceedings did Appellant contend that the mortgagee to whom he had been making payments was operating under an improperly transferred mortgage."). Based on the foregoing, the Court concludes that Plaintiff has advanced sufficient record evidence demonstrating that it had valid Omnibus Assignments and Allonges from Bear Stearns so as to satisfy the standard in Federal Rule of Civil Procedure 56(c).

MMDG and DGMM base their arguments to the contrary on speculation—namely, that Mr. Amenyah's equivocation regarding the June, 2007, date of execution of the Omnibus Assignments and Allonges creates a material factual dispute as to whether they were signed by Bear Stearns. But as explained, the more precise and accurate way to frame the material factual determination is whether the assignment documents that were and are indisputably in Plaintiff's possession are valid. MMDG and DGMM have failed to raise any evidence that fairly raises a factual dispute on that issue.[10] Viewing the single factual dispute that MMDG and DGMM have raised—whether the documents were executed in June, 2007—in the light most favorable to MMDG and DGMM, the only inference that could be drawn is that the documents *may not have been* executed in or around June of 2007. *See Anderson*, 477 U.S. at 256–57 ("[D]iscredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion.") (quoting *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984)). But MMDG and DGMM do not assert that the documents needed to be dated in order to be valid. Even acknowledging that the date that the documents were executed may not be stated on the face of

---

[10] The Court notes that MMDG and DGMM theoretically could have potentially created a factual dispute regarding the validity of the assignments by subpoenaing additional documents or deposing other material individuals involved with the transactions in an effort to gather evidence (rather than speculation) that the assingments were signed by Bear Stearns after its merger with JP Morgan. For instance, the representative that signed the Omnibus Assignments and Allonges on behalf of Bear Stearns is listed below his signature. The record does not reflect that he was deposed.

the assignment documents, the Court concludes that there is no genuine factual dispute on the record regarding the validity of the Omnibus Assignments and Allonges that were in Plaintiff's possession and kept as part of Plaintiff's regular business practices. (Amenyah Dep. at 44:10–14). The documents on their face show that they were signed by a representative of Bear Stearns. Defendants have advanced no evidence that they were not. That being the case, whether they were actually signed in June, 2007, is not a *material* dispute. Because Plaintiff carried its burden in demonstrating that there was no genuine issue as to validity of the assignment documents, MMDG and DGMM had to point to specific evidence in the record demonstrating that these issues were still in dispute. Fed. R. Civ. P. 56(e). They failed to do so.

The Court also concludes that, for additional and independently sufficient reasons, this matter can be resolved at the summary judgment stage because the entire issue of the validity of the assignment documents is not material because it would not affect the outcome of the case. *See Schoonejongen*, 143 F.3d at 129. First, this is so because possession of the original executed Note and Mortgage is sufficient to establish standing in a mortgage foreclosure proceeding under Pennsylvania law. *See Barbezat*, 131 A.3d at 69. It is undisputed that Plaintiff possesed the original executed Notes and Mortgages. Plaintiff attached a copy of the original Notes to its Complaint and Motions for Summary Judgment. (ECF Nos. 1-2, 47-4, 50-4). MMDG and DGMM have never challenged the authenticity of the copies of the Notes or Allonges, nor contended that Plaintiff does not possess the original documents. They are thus admissible to the same extent as the originals.[11] Fed. R. Evid. 1003; *see also U.S. Bank v. Montalvo*, No. 3:08-CV-1504, 2013 WL

---

[11] Plaintiff states in its brief that these "original documents are all in the possession of [Plaintiff's] counsel and available for review and inspection as the Court may desire." (Br. in Supp. at 10, ECF No. 46). The record does not reflect whether MMDG or DGMM have examined these documents or requested to. The record also reflects that MMDG and DGMM have never challenged Plaintiff's assertion that Plaintiff possesses the original documents, which were attached as exhibits to Plaintiff's original Complaints and Motions for Summary Judgment. Thus, the Court may consider Plaintiff's possession of the original Notes to be undisputed for the purposes of this Motion, *see* Fed. R. Civ. P. 56(e), and may consider the copies in the record to the same extent as the originals, pursuant to Fed. R. Evid. 1003.

6058872, at *3 n.3 (M.D. Pa. Nov. 14, 2013) (rejecting argument that it was improper to attach a copy of a note to a motion for summary judgment in a mortgage foreclosure action because "courts routinely accept copies of documents in lieu of originals where the copy's authenticity is not at issue"). The Notes provide that "Lender may, at any time, sell, transfer or assign this Note, the Security Instrument and the Other Security Documents, and any or all servicing rights with respect thereto[.]" (Notes at 6). The chain of possession by which Plaintiff came into possession of these Notes is immaterial in determining whether Plaintiff can enforce the Notes in these foreclosure actions. *See Gerber v. Piergrossi*, 142 A.3d 854, 862–63 (Pa. Super. Ct. 2016) (citing *JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1266 (Pa. Super. Ct. 2013)).

Finally, even if the assignments of the Notes to Plaintiff were defective (and for the reasons stated above, the Court concludes they are not), MMDG and DGMM would lack standing to challenge their validity. The assignments of the Notes from Bear Stearns to Plaintiff are contracts. *Souders v. Bank of Am.*, No. 1:CV-12-1074, 2012 WL 7009007, at *9 (M.D. Pa. Dec. 6, 2012) (citing 6 Am. Jur. 2d Assignments § 1 ("An assignment is a contract between the assignor and the assignee, and is interpreted or construed according to the rules of contract construction.")). Neither MMDG nor DGMM were parties to these agreements, nor were they third-party beneficiaries of them. *See Scarpitti v. Weborg*, 530 Pa. 366, 372–73 (1992) (holding that a party who is not a party to the contract "becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself"). The Omnibus Assignments from Bear Stearns to Plaintiff did not alter the underlying debt obligation nor did they evince an intention to benefit MMDG or DGMM in any way. In simplest terms, from MMDG and DGMM's perspective, the assignments only meant that their mortgage payments would be made to a different party. But, the money that was owed would be the same. Moreover, the Court

-14-

notes that in the Mortgage Agreements (of which MMDG and DGMM *were* parties) MMDG and DGMM agreed that "Lender may, at any time, sell, transfer or assign the Note." (Mortgage Agreements § 19.1). This further undercuts any potential argument that MMDG and DGMM could have acquired any new rights or third-party beneficiary status as a result of the Omnibus Assignments—they already acknowledged that part of the deal with them granting the Mortgages was that the Notes might be later assigned to a new Lender. Accordingly, MMDG and DGMM lack standing to challenge the validity of the assignments. *See Ira G. Steffy & Son, Inc. v. Citizens Bank*, 7 A.3d 278, 287–88 (Pa. Super. Ct. 2010) (holding that a party that acquired no rights under an agreement lacked standing to complain of a breach of the agreement).

MMDG and DGMM further lack standing to challenge the assignments because they would suffer no "injury in fact" even if the assignments of the Notes were, in fact, defective or invalid. *See Souders*, 2012 WL 7009007 at *10 (citing *In re Walker*, 466 B.R. 271, 285–86 (Bankr. E.D. Pa. 2012)). The Notes that secure the Mortgages are negotiable instruments. *Gibson*, 102 A.3d at 466. Even if Plaintiff was not validly assigned the Notes, "the obligation of the part[ies] obliged to pay the instrument[s] is discharged even though payment is made with knowledge of a claim to the instrument . . . by another person." 13 Pa. C.S. § 3602(a); *see also Gerber*, 142 A.3d at 862 ("[A] borrower is not in peril of double liability or injury by an allegedly defective assignment, for if the assignment to the foreclosing party had been defective, the borrower would not have to pay on the note to another party."). This principle applies here. MMDG and DGMM can suffer no injury through an allegedly defective assignment because the Omnibus Assignments and Allonges did not alter the underlying debt obligations and MMDG and DGMM bear no risk of double liability because, pursuant to 13 Pa. C.S. § 3602(a), payment to Plaintiff would discharge

their obligation under the Notes regardless of the validity of the assignment from Bear Stearns to Plaintiff.

In short, even if there were factual disputes regarding if the Omnibus Assignments and Allonges that assigned Bear Stearns' interest in the Notes were validly executed (and there are not, for the reasons explained above), "given [Plaintiff's] uncontested ownership of the mortgage[s] and possession of the note[s]," *Barbezat*, 131 A.3d at 69, the Court concludes that these would be immaterial factual disputes. MMDG and DGMM have cited no authority to counter or otherwise qualify the multiple Pennsylvania authorities noted above. *See also, e.g.*, *Gerber*, 142 A.3d at 863 ("[G]iven Appellee's ownership of the mortgage and possession of the Note, we find he has standing as a real party in interest to pursue the underlying foreclosure action."). And at any rate, MMDG and DGMM lack standing to challenge the validity of the assignments of the Notes. Thus, Court concludes that summary judgment is appropriate because the sole potential factual dispute between the parties in these actions (which the Court has concluded is not truly disputed, as MMDG and DGMM have produced no record evidence to legitimately call into question the validity of the assignments executed by Bear Stearns) is legally immaterial. For the reasons that follow, the Court concludes that Plaintiff is entitled to summary judgment as a matter of law on all claims.

### c. Plaintiff is entitled to summary judgment as a matter of law.

This is the situation as the Court sees it. At the time that Plaintiff foreclosed on the Mortgages, they held the Notes and the Mortgages that secured the Notes via possession of the original documents and various assignment documents. The Omnibus Assignments assign "all right, title and interest of Assignor in and to" the Mortgages at issue. (Omnibus Assignments at 2). Bear Stearns assigned whatever interest it had in the Mortgages and Notes to Plaintiff when the

Omnibus Assignments were executed. It is also undisputed that MERS assigned "all of Assignor's right, title and interest in and to the mortgage" (whatever those interests may have been) to Plaintiff on June 7, 2017. (Mortgage Assignments at 3). So, Plaintiff was in possession of two unconditional assignments from the two parties that originally held interests in both Mortgages when it initiated these foreclosure proceedings. Whatever interest each party held at a given time is a moot point because both MERS and Bear Stearns assigned Plaintiff the entirety of whatever interests that they held in the Mortgages prior to Plaintiff initiating these foreclosure proceedings.

MMDG and DGMM advance several arguments as to why the situation is not so simple. First, they argue that it is unclear whether MERS was the "mortgagee" or "Lender's nominee" as a result of the execution of the Mortgage Agreements. (Br. in Opp. at 8). According to MMDG and DGMM, this uncertainty renders summary judgment inappropriate because MERS may have lacked authority to transfer the Mortgage or otherwise ineffectively transferred the Mortgage. (*Id.*). Second, MMDG and DGMM argue that the Notes and the Mortgages were irreparably bifurcated due to the method of the initial grant of the Mortgages (but not the Notes) to MERS. (*Id.* at 7). In MMDG and DGMM's view, these uncertainties *may* mean that the transfer of the Note and/or the Mortgage to Plaintiff were ineffective and thus further findings of fact are necessary before it can be determined whether Plaintiff can foreclose on these mortgages. The Court notes that these are legal, not factual, arguments and thus can be resolved by the Court. The Court will address each of these arguments in turn.

i. Status of MERS as Mortgagee or Nominee

MMDG and DGMM make much ado about the "fact" that they say that it is unclear, based on the original Mortgage Agreements, whether MERS is a "mortgagee" or "nominee." For the reasons that follow, the Court has little difficulty concluding that MERS was the nominee of

-17-

Bear Stearns for both mortgage transactions. But, this distinction is immaterial in this case because MERS executed assignments of all of its "right, title and interest in and to" both Mortgages on June 7, 2017. (Mortgage Assignments at 3).

First, MMDG and DGMM are incorrect that "the plain text of the Mortgage[s] indicate[] that MERS was the mortgagee, rather than a mere nominee." (Br. in Opp. at 8). The plain text of the Mortgage Agreements actually indicates that MERS was "mortgagee and Lender's nominee." (Mortgage Agreements at 4). The fact that MERS is designated as "mortgagee" is irrelevant given the role and nature of MERS in mortgage transactions and the fact that the remainder of the Mortgage Agreements clearly establish that MERS was the nominee of Bear Stearns for these transactions. At the outset, some explanation (from Pennsylvania case law) of what exactly MERS is would be helpful.

> MERS is a national electronic loan registry system that permits its members to freely transfer, among themselves, the promissory notes associated with mortgages, while MERS remains the mortgagee of record in public land records as "nominee" for the note holder and its successors and assigns. MERS facilitates the secondary market for mortgages by permitting its members to transfer the beneficial interest associated with a mortgage—that is, the right to repayment pursuant to the terms of the promissory note—to one another, recording such transfers in the MERS database to notify one another and establish priority, instead of recording such transfers as mortgage assignments in local land recording offices. It was created, in part, to reduce costs associated with the transfer of notes secured by mortgages by permitting note holders to avoid recording fees.

*Barbezat*, 131 A.3d at 71 n.2 (quoting *Montgomery Cty., Pa. v. MERSCORP INc.*, 795 F.3d 372, 374 (3d Cir. 2015).

Another federal court described MERS as "the Wikipedia of land registration systems." *Culhane v. Aurora Loan Servs. of Neb.*, 826 F. Supp. 2d 352, 368 (D. Mass. 2011). Mortgage lenders, loan servicers, law firms, title companies, banks, insurance companies and the like

comprise MERS's membership rolls. *Id.* These members agree to name MERS as the "mortgagee of record" in the local land records for the mortgaged properties so that the members can transfer the beneficial interests associated with the mortgages amongst themselves without the need to record the assignments. *Id.* The members themselves are responsible for updating the MERS registry to reflect any transfers of the beneficial interests, and so long as a beneficial interest in a mortgage is transferred among MERS members, MERS remains the mortgagee of record. *Id.* In this way, the members "agree to appoint MERS to acts as their common agent on all mortgages they register in the MERS system." *Id.* at 369 (quoting *MERSCORP, Inc. v. Romaine*, 861 N.E.2d 81, 83 (N.Y. 2006)); *see also Deutsche Bank Nat'l Trust Co. v. Pietranico*, 928 N.Y.S.2d 818, 835 (N.Y. Sup. Ct. 2011) ("As a matter of contract, under the MERS operating agreement, MERS becomes the agent for the new principal, the next purchasing member, each time there is a transfer.").

In other words, in mortgage transactions involving MERS, MERS holds the legal title to the underlying mortgage while the lender retains the beneficial interest associated with the mortgage, *i.e.*, the right to repayment on the note. MERS claims no ownership interest in the underlying mortgages and acts solely as the lenders' nominee—a particularly narrow form of agency relationship. *See Culhane*, 862 F. Supp. 2d at 369–70 (citing Black's Law Dictionary (9th ed. 2009)). The *Culhane* court, after examining MERS's internal policies and rules, concluded that "the second definition of "nominee" given in Black's Law Dictionary" would "[p]erhaps [be] even more fitting to describe MERS's role in the mortgage transaction"—a "party who holds bare legal title for the benefit of others." *Id.* (citing *MERS, Inc. v. Saunders*, 2 A.3d 289, 295 (Me. 2010)). Contrary to MMDG and DGMM's assertions, under Pennsylvania law, there is nothing contradictory, inconsistent, or problematic with designating MERS as "mortgagee" and "Lender's

nominee" in a mortgage instrument. Pennsylvania courts that have analyzed similar mortgages have uniformly concluded that MERS has the authority to transfer the mortgage under these mortgage agreements and that the assignee of the mortgage has standing as a real party in interest to enforce the mortgage.[12]

Courts and scholars have discussed the potential formalistic problems created by MERS claiming to both be a "mortgagee" and "nominee" in a mortgage transaction. *See generally Culhane*, 826 F. Supp. 2d at 370 (collecting authorities). In essence, MERS is simultaneously claiming to be both a principal and agent. *Id.* However, given the form of agency exercised by MERS and the fact that it claims no underlying interest in the mortgage itself, "MERS is hardly a principal; at most, it is an agent." *Id.* Under Pennsylvania law, it appears to the Court that the contours of MERS's authority as mortgagee and nominee are determined by the mortgage agreement. *See Gibson*, 102 A.3d at 465 ("[W]e reject Appellant's contention that MERS lacked the authority to assign the mortgage. Appellant cites no persuasive authority in support of this contention. The mortgage expressly granted the right to exercise all Lender's interests to MERS.").

The Mortgage here comports with a limited view of MERS's role in this transaction, confirming that it was the nominee of the Lender. Article 11 of the Mortgage, entitled "Rights and Remedies," lists the actions that "Lender, or Mortgagee" may take "[u]pon the occurrence of any Event of Default." (Mortgage Agreements § 11.1). In explaining the actions that MERS, the "Mortgagee," may take, the Mortgage provides that MERS may "act[] on behalf of and at the sole

---

[12] *See Gerber*, 142 A.3d at 860 ("MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument."); *MERS, Inc. v. Ralich*, 982 A.2d 77, 81 (Pa. Super. Ct. 2009) ("The Mortgage provides at ¶ C that MERS is the mortgagee and is acting "as a nominee for Lender and Lender's successors and assigns.""); *Wells Fargo Bank N.A. v. Spivak*, 104 A.3d 7, 8 (Pa. Super. Ct. 2014) ("To secure his obligations under the Note, Spivak executed a purchase money mortgage (the "Mortgage") in favor of Mortgage Elections Registration Systems, Inc. ("MERS"), as mortgagee and nominee for Trident.").

discretion of Lender in its capacity as Lender's nominee." (*Id.*). Later, the Mortgage Agreements explicitly make clear that "Lender," in the context of the Mortgages, "shall be deemed to collectively or individually (as the context requires) refer to Lender or to Mortgagee, acting on behalf of and at the sole direction of Lender in its capacity as Lender's nominee[.]" (*Id.* § 16.1). In short, the Mortgage envisions and defines the "Mortgagee" (*i.e.*, MERS) as the "Lender's nominee" and makes clear that the Lender retains the authority to direct MERS's actions such that the Lender, as principal, preserves its rights in the Mortgage.[13]

MERS is specifically authorized to transfer the Mortgage if done so at the direction of the Lender. (Mortgage Agreements § 19.1) ("Lender may, at any time, sell transfer or assign the Note, this Security Instrument and the Other Security Documents, and any or all servicing rights with respect thereto[.]"). As soon as Plaintiff came into possession of the Note, Plaintiff became the "Lender" in the context of the Mortgage. (*Id.* § 21.1) ("[T]he word "Lender" shall mean "Lender and any subsequent holder of the Note[.]"). Thus, MERS would have been authorized to assign the Mortgage under Pennsylvania if it did so at the direction of Plaintiff when Plaintiff held the Note.

But the dispute over whether MERS is a "mortgagee" or "nominee" is another red herring in this case. In MMDG's view, if MERS was the legal mortgagee, "then the interests in the Note and the Mortgage were bifurcated." (Br. in Opp. at 9). But, if MERS was "only mere "nominee" of Bear Stearns" then the Assignment of Mortgage Agreement would be invalid because Bear Stearns would have already merged with JP Morgan by the time MERS assigned its rights to

---

[13] Bear Stearns was also designated as "Lender" in the Subordination, Non-Disturbance and Attornement Agreements, executed on April 25, 2007. (the "SNDAs", ECF Nos. 53-13, 56-13). Such a designation is perfectly consistent with the Mortgage Agreements. As the party maintaining the beneficial interest in the Mortgages, Bear Stearns executed the SNDAs to maintain its priority for payments on the property. (*E.g.*, SNDAs at 1). It makes sense that MERS would not be a signatory to these agreements, as it held the Mortgages solely in its capacity as nominee for Bear Sterns and claimed no right to payment from the mortgagors.

Plaintiff. (*Id.*). Both of these conclusions are wrong. By virtue of the Omnibus Assignments and possession of the original Notes, Plaintiff stood in the shoes of Bear Stearns, which fixes any authorization issue if MERS was solely a nominee. Any potential problem with bifurcation of the Note and Mortgage was cured when the Mortgage Assignments from MERS were executed because they unified possession of the Notes and Mortgages in Plaintiff.

## ii. Bifurcation of the Mortgage and Note

MMDG and DGMM contend that assigning the Mortgages to MERS while Bear Stearns maintained possession of the Notes irreparably split the Notes and the Mortgages, rendering the underlying debts unsecured. (Br. in Opp. at 9) (citing *Walker*, 466 B.R. at 279 n.13). Assigning the original Mortgages to MERS would, strictly speaking, result in at least the separation of the legal titles to the Mortgages from the Notes. *See generally* James M. Davis, *Paper Weight: Problems in the Documentation and Enforcement of Transferred Mortgage Loans, and a Proposal for an Electronic Solution*, 87 Am. Bankr. L.J. 305, 350–52 (2013). But the record evidence establishes that Plaintiff held the Notes and the Mortgages prior to initiating foreclosure proceedings. Thus, MMDG's argument must be implicitly premised on the contention that once a note is separated from a mortgage, such a bifurcation cannot be cured. This contention is meritless.

As a preliminary matter, the case relied upon by MMDG and DGMM for this point "express[ed] no opinion" on whether a separation of the note and mortgage actually results in an unsecured debt. *Walker*, 466 B.R. at 279 n.13. The *Walker* court specifically noted that the Debtor in the action did not object to the fact that the note was transferred to a trust while MERS continued to hold legal title to the mortgage. *Id.*

MMDG and DGMM have cited no authority for their proposition that once a note and mortgage are split that they can never be reunited. The Court is not aware of any authority that so

holds and has observed that several jurisdictions facing this or similar questions have come to the opposite conclusion. *See, e.g.*, *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 260 (Nev. 2012) ("We further conclude that such separation is not irreparable or fatal to either the promissory note or the deed of trust, but it does prevent enforcement of the deed of trust through foreclosure unless the two documents are ultimately held by the same party."); *Culhane*, 826 F. Supp. 2d at 363 (observing that under Massachusetts law it is longstanding view that a transfer of the note secured by a mortgage results in the holder of the mortgage retaining legal title to the mortgage and holding the same in trust for the holder of the note); *In re Corley*, 447 B.R. 375, 380 (Bankr. S.D. Ga. 2011) ("[A]ny temporary disconnect between the two documents was curable, and in fact was cured by the post-petition assignment which reunited possession of the Note and Security Deed."); *see also Ruiz v. MERS, Inc.*, 15 N.Y.S.3d 376, 377 (N.Y. App. Div. 2015) (rejecting contention that a mortgage executed in favor of MERS as "mortgagee" irreparably bifurcated the mortgage and the note and rendered the mortgage void *ab initio*).

The reasoning of these decisions is consistent with Pennsylvania law. Under Pennsylvania law, a party has standing to initiate a foreclosure proceeding when it has "ownership of the mortgage and possession of the note." *Barbezat*, 131 A.3d at 69; *Gerber*, 142 A.3d at 863 ("[G]iven Appellee's ownership of the mortgage and possession of the Note, we find he has standing as a real party in interest to pursue the underlying foreclosure action."). The Court is aware of no authority qualifying these pronouncements. In other words, it appears to the Court that, under Pennsylvania law, so long as the party seeking foreclosure holds the mortgage and note prior to initiating foreclosure proceedings, it is immaterial what "paths" the mortgage and note may have traveled to reach the foreclosing party. So, even if it were legally significant that MERS held the Mortgages while Bear Stearns held the Notes (it is not, for the reasons explained above),

any defect would have been cured by Plaintiff reuniting the Notes and Mortgages when MERS executed the Mortgage Assignments on June 7, 2017, (ECF Nos. 53-9, 56-9), prior to Plaintiff initiating foreclosure proceedings on August 2, 2017. (Compl., ECF No. 1).

### iii. MERS's Authority to Assign the Mortgage

If, on the other hand, MERS was only Bear Stearns' "nominee," then according to MMDG and DGMM, the Mortgage Assignments from MERS to Plaintiff were invalid because Bear Stearns had merged with JP Morgan by the time MERS assigned its interest in the Mortgages to Plaintiff. This argument is also meritless. The sole case that MMDG and DGMM cites in support of this contention, in the Court's estimation, actually belies this assertion. (Br. in Opp. at 9) (citing *U.S. Bank N.A. v. Mallory*, 982 A.2d 986 (Pa. Super. Ct. 2009)). In *Mallory*, the Appellant executed a mortgage in favor of MERS "as a Nominee for Mortgage Lenders Network USA, Inc." 982 A.2d at 988. The Superior Court of Pennsylvania upheld the trial court's determination that Appellee, U.S. Bank, was a real party in interest entitled to foreclose on the mortgage *because it held the note*. *Id.* at 994. Moreover, the *Mallory* court credited MERS—as a nominee—transferring the mortgage to the Appellee prior to foreclosure. *Id.* But, this was not necessary for the Appellee to be a real party in interest. *Id.* The most definitive holding in the case appears to be that "the recording of an assignment of the mortgage was not a prerequisite to Appellee having standing to seek enforcement of the mortgage via a mortgage foreclosure action." *Id.* This does not comport with MMDG and DGMM's cryptic summary of the *Mallory* holding on page 9 of their respective Briefs in Opposition ("it is axiomatic that in order to assign an interest in property, the assignor must have an interest in the property"), and certainly does not support MMDG and DGMM's contention that the assignment from MERS was invalid because of the Bear Stearns merger with JP Morgan.

-24-

As *Mallory* illustrates, it appears that Plaintiff did not need to have MERS assign the Mortgages once Plaintiff came into possession of the Notes. But this point is moot because, as mentioned, MERS assigned all of its "right, title and interest in and to the mortgage" to Plaintiff on June 7, 2017. (Mortgage Assignments at 3). Contrary to what MMDG and DGMM suggest in their briefs, it did not do so as "nominee of Bear Stearns" (Br. in Opp. at 8), rather, it did so as "Assignor." (Mortgage Assignments at 3).[14] An examination of the Mortgage Agreements reveals that MERS was entitled to transfer its interest to Plaintiff, whatever that interest may have been, because Plaintiff became the "Lender" (for purposes of the Mortgage and Security Agreement) as soon as it possessed the Notes. (Mortgage Agreements § 21.1) ("Lender" shall mean "Lender and any subsequent holder of the Note"; the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Security Instrument."); *see also Am. Soc'y for Testing & Materials v. Corrpro Cos., Inc.*, 292 F. Supp. 2d 713, 718 (E.D. Pa. 2003) ("[T]he assignee stands in the shoes of the assignor and assumes all of his rights."). Thus, if MERS was anyone's "nominee" in 2017 when it transferred its entire interest to Plaintiff, it was *Plaintiff's* nominee because Plaintiff held the Notes.

Cases finding issues with standing and in which MERS is the nominee of a lender/note holder are typically cases in which either MERS is instituting the foreclosure proceeding in its own name or where MERS retains legal title to the mortgage. *See generally* Dustin A. Zacks, *Standing in Our Own Sunshine: Reconsidering Standing, Transparency, and Accuracy in Foreclosures*, 29 Quinnipiac L. Rev. 551, 571–79 (2011) (collecting cases). Courts have come to inconsistent

---

[14] The phrase "as nominee of Bear Stearns" appears in the description of the original Mortgage and Security Agreement. In other words, this language appears only to illustrate that MERS, at the time of the original Mortgage and Security Agreement, was the nominee of Bear Stearns. Throughout the rest of the Assignment of Mortgage and Security Agreement it is clear that MERS is referred to as "Assignor." MMDG and DGMM are attempting to cherry-pick language to the contrary out of context.

conclusions about MERS's standing in those scenarios, *see id.*, but this case presents neither of those potential pitfalls: Plaintiff is initiating foreclosure in its own name and MERS assigned all of its interest in the mortgages to Plaintiff prior to foreclosure.[15]

But most importantly, MMDG and DGMM have cited no authority for the position that they now advance, nor is the Court aware of any. It is well-established under Pennsylvania law that MERS has the ability to assign a mortgage when the mortgage instrument vests MERS with the authority to act on the lender's behalf. *Gibson*, 102 A.3d at 465 (explicitly holding that MERS has the authority to assign mortgages under Pennsylvania law). Here, according to the Mortgage Agreements, MERS is specifically authorized to transfer the Mortgage if done so at the direction of the Lender. (Mortgage Agreements § §19.1) ("Lender may, at any time, sell transfer or assign the Note, this Security Instrument and the Other Security Documents, and any or all servicing rights with respect thereto[.]"). As explained above, "Lender," in the context of the Mortgage, "shall be deemed to collectively or individually (as the context requires) refer to Lender or to Mortgagee, acting on behalf of and at the sole direction of Lender in its capacity as Lender's nominee[.]" (*Id.* § 16.1). As soon as Plaintiff came into possession of the Notes, Plaintiff became the "Lender" in the Mortgages. (*Id.* § 21.1) ("[T]he word "Lender" shall mean "Lender and any subsequent holder of the Note[.]"). Thus, MERS would have been authorized to assign the Mortgages under Pennsylvania law if it did so at the direction of Plaintiff when Plaintiff held the Notes.

---

[15] Indeed, at least one court that concluded that MERS did not have standing to bring a foreclosure action because the note and mortgage were held by separate parties acknowledged that this could be remedied through MERS assigning its interest in the mortgage, which is precisely what occurred here prior to the initiation of the foreclosure proceedings. *See MERS, Inc. v. Johnston*, No. 420-6-09, 2009 Vt. Super. LEXIS 15, at *25 (Vt. Super. Ct. Oct. 28, 2009) ("[I]f a loan is to be foreclosed MERS could assign the mortgage in order to allow for a foreclosure action.").

## IV. CONCLUSION

The record evidence in this case establishes that Plaintiff was assigned both Mortgages and held the original promissory Notes evincing the underlying debts, as well as the Omnibus Assignments and Allonges relating to these Notes, prior to initiating these foreclosure proceedings. Given Plaintiff's uncontested possession of these documents, the Court concludes that Plaintiff has standing as a real party in interest to foreclose on these Mortgages. Even if all reasonable inferences are drawn in favor of MMDG and DGMM, the non-moving parties, the Court concludes that no reasonable fact-finder could find otherwise based upon the evidence in the record.

The involvement of MERS in these transactions is legally insignificant, as explained above, because Plaintiff is initiating this foreclosure proceeding in its own name, Plaintiff holds the original Notes, and MERS assigned the entirety of its interests in the Mortgages, whatever they may have been, to Plaintiff prior to the initiation of this foreclosure proceeding. MERS was legally authorized to make these assignments under Pennsylvania law and the original Mortgage Agreements. Thus, any potential issues with bifurcating the legal and beneficial interests in the underlying Mortgages were cured after the legal titles to the Mortgages and the beneficial interests in the Mortgages (*i.e.*, the right to repayment on the Notes) were reunited by MERS assigning the Mortgages to Plaintiff and Plaintiff holding the Notes.

MMDG and DGMM admit that they failed to pay off the Note at maturity and were in default. (Guttman Dep. at 31:21–32:4). Accordingly, Plaintiff has established "the existence of an obligation secured by a mortgage, and a default on that obligation." *Iowa Square Realty*, 2018 WL 783752 at *4. Summary judgment is therefore appropriate in this case. *See Cunningham*, 714 A.2d at 1057. For the foregoing reasons, the Plaintiff's Motions for Summary Judgment (ECF Nos. 43, 44) are GRANTED.

Judgment shall be entered in favor of Plaintiff on all counts. Plaintiff produced statements from the loan servicer, both dated May 14, 2018, that reflect the amounts needed to pay off each loan, taking into account outstanding principal, accrued interest, default interest, late fees, outstanding lender expenses, funds in suspense/reserves, and applicable per diem interest. (ECF Nos. 47-12, 50-12). These documents state that these amounts are "subject to change to reflect any transactions that may occur on or after the date of this letter." (*Id.*). Plaintiff also produced a transaction history of both loans to reflect payments received through May 7, 2018. (ECF Nos. 47-13, 50-13). This record evidence is uncontroverted by MMDG and DGMM.[16] Accordingly, judgment shall be entered against MMDG in the amount of $3,462,453.34 together with additional interest, fees, and expenses from June 2, 2018, to the date of any Marshal's or other judicial sale, less credit to MMDG for any and all payments made on the Note on or since May 14, 2018. Judgment is also entered against DGMM in the amount of $3,639,064.45 together with additional interest, fees, and expenses from June 2, 2018, to the date of any Marshal's or other judicial sale, less credit to DGMM for any and all payments made on the Note on or since May 14, 2018.

Appropriate Orders will issue.

Mark R. Hornak
United States District Judge

Dated: December 12, 2018
cc: All counsel of record

---

[16] MMDG and DGMM assert that the documents at ECF No. 47-12 and ECF No. 50-12 are not accountings that reflect all payments made. (MMDG CSF ¶ 27, ECF No. 52; DGMM CSF ¶ 27, ECF No. 55). But aside from citing to their corporate designee's deposition testimony that post-maturity payments were made, (Guttman Dep. at 35:7–36:22), MMDG and DGMM advance no record evidence to contest the validity or veracity of Plaintiff's calculations of the amounts owed. Nor do MMDG and DGMM dispute the amounts owed on the Notes in their briefs. Moreover, Plaintiff provided uncontroverted transaction histories of both loans at ECF Nos. 47-13 and 50-13 that reflect post-maturity payments. Should MMDG and/or DGMM discover that additional payments were made that are not reflected in these unimpeached documents, they may move to alter the judgment under Fed. R. Civ. P. 60(b). However, on the record currently before the Court, the Court concludes that the amounts due and owing on the Notes are not genuinely in dispute and therefore Plaintiff is entitled to their damages as calculated and reflected in the record.

-28-